**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| NICHOLAS LAYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IDSCAN.NET, INC.,<br><br>Defendant. | Case No. 2:26-cv-01937<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Nicholas Layman ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant IDScan.net, Inc. ("IDScan.net" or "Defendant") and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## I. NATURE OF ACTION

1. This class action arises from Defendant's failure to protect highly sensitive personally identifiable information ("PII" or "Private Information") that was compromised as a result of a cyber incident (the "Data Breach" or "Breach").

2. Defendant IDScan.net is a technology and information company that "offers the leading AI-powered identity verification platform focusing on age validation and fraud reduction for compliance in both digital and physical environments."[1]

[1] IDScan.net, LINKEDIN, https://www.linkedin.com/company/idscan-net/ (last visited Sept. 2, 2026).

3. In the course of its regular business operations, Defendant collects and stores an enormous amount of PII derived from government-issued driver's licenses and IDs, passports, and other identity documents, including, *inter alia*, full names, addresses, dates of birth, government-issued ID numbers and photographs, nationalities, genders, and physical characteristics. Defendant has a resulting duty to ensure the PII it maintains is safeguarded from unauthorized disclosure.

4. On or about August 31, 2026, cybersecurity researchers were alerted to a service advertised on a Russian cybercrime forum, called Nexus, which "offer[s] access to digital scans" and "claims to have more than 153 million drivers licenses for people in the United States and Canada, as well as more than 10 million identification cards; more than three million travel documents and/or international IDS; and at least 579,000 medical cards."[2] Moreover, "[a] quick look around Nexus finds they are likely not exaggerating about that 153 million number[.]"[3]

5. The cybercriminals operating the Nexus website "claimed to be siphoning images collected by a Louisiana-based identity verification company, IDScan.net."[4]

6. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering it an easy target for cybercriminals.

---

[2] Brian Krebs, *FBI Probes Service Selling 153M+ Drivers Licenses*, KREBS ON SEC. (Sept. 1, 2026), https://krebsonsecurity.com/2026/09/fbi-probes-service-selling-153m-drivers-licenses/.

[3] *Id.*

[4] Ernestas Naprys, *Reports On Alleged Massive IDScan.net Data Breach: 153 Million Driver's Licenses For Sale*, CYBERNEWS (Sept. 2, 2026), https://cybernews.com/security/drivers-licenses-for-sale-following-idscan-breach-allegations/.

7. On information and belief, and as of the filing of this Complaint, Defendant has not provided timely and adequate notice of the Data Breach, leaving victims vulnerable to identity theft without adequate warning to monitor their accounts and credit reports to prevent unauthorized use of their PII.

8. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

9. In failing to adequately protect the PII in its care and, on information and belief, failing to provide timely and adequate notice of the Breach, Defendant harmed a large number of individuals whose identity documents were scanned or processed through its platform, including Plaintiff and Class members.

10. Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class, directly or indirectly, had their PII entrusted to Defendant. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

11. Plaintiff is a Data Breach victim.

12. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## II. PARTIES

13. Plaintiff Nicholas Layman is a natural person and citizen of Alabama, residing in Jefferson County, where Plaintiff intends to remain.

14. Defendant IDScan.net is incorporated in the State of Delaware and maintains its principal place of business at 2045 Lakeshore Drive, Suite 526, New Orleans, Louisiana 70122.

## III. JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The proposed class is estimated to include hundreds of thousands of individuals whose identification documents were scanned at Defendant's more than 20,000 customer locations nationwide. Recoverable damages include compensatory damages for lost time, mitigation expenses, emotional distress, and loss of privacy for each class member; the equitable value of prospective injunctive and declaratory relief concerning Defendant's ongoing data-security practices; and attorneys' fees. Even assuming conservative per-capita compensatory damages of $50 per class member across a class of 100,000 individuals—a small fraction of the reportedly 153 million driver's-license records at issue—the aggregate compensatory damages alone would exceed $5,000,000.

16. Minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A). Defendant is, upon information and belief, a citizen of Delaware and Louisiana. Upon information and belief, members of the proposed Class include citizens of states other than Louisiana because Defendant's customer locations include car-rental counters, hotels, casinos, and retailers in all 50 states, and travelers whose licenses were scanned at those out-of-state locations would be citizens of the states in which they are domiciled.

17. The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operates, conducts, engages in, or carries on a business or business venture in this State. Defendant is headquartered at 2045 Lakeshore Drive, Suite 526, New Orleans, Louisiana 70122.

## IV. BACKGROUND

### A. Defendant Collected and Stored the PII of Plaintiff and the Class

18. Defendant IDScan.net is a leading technology company in the field of ID verification.

19. Defendant IDScan.net "performs more than 21 million verifications monthly at over 20,000 locations worldwide."[5]

20. Thus, as the very basis of its business, Defendant receives, handles, and processes the PII of tens of millions of individuals throughout the country.

21. The information held by Defendant at the time of the Data Breach included the unencrypted PII of Plaintiff and Class members.

22. Upon information and belief, Defendant made promises and representations to individuals that the PII collected would be kept safe and confidential, the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it.

23. Plaintiff and Class members had their PII provided to the Defendant, directly or indirectly, with the reasonable expectation that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

24. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class members relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their PII and demand security to safeguard it.

---

[5] CYBERNEWS, *supra* note 4.

25. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class members from involuntary disclosure to third parties. Defendant has a legal duty to keep individuals' PII safe and confidential.

26. Defendant had obligations under the FTC Act, contract, industry standards, and representations made to the public, to keep Plaintiff's and Class members' PII confidential and to protect it from unauthorized access and disclosure.

27. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class members' PII, as Defendant's business model—ID verification—is predicated on handling and processing enormous amounts of PII through. Without the required submission of PII, Defendant could not perform the services it provides.

28. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class members' PII from disclosure.

**B. Defendant's Data Breach**

29. As discussed *supra*, on or about August 31, 2026, a source alerted cybersecurity journalist Brian Krebs to Nexus, a newly advertised criminal identity-theft marketplace.[6]

30. Nexus claimed to possess more than 153 million driver's-license records, more than 10 million other identification cards, more than 3 million travel or international identification documents, and approximately 579,000 medical cards. Moreover, according to Krebs, "[a] quick look around Nexus finds they are likely not exaggerating about the 153 million number[.]"[7]

---

[6] KREBS ON SEC., *supra* note 2.

[7] *Id.*

31. Nexus offered searchable digital images of government identification documents belonging predominantly to American consumers.

32. Some Nexus records contained six separate images of a single license, including front-and-back conventional, infrared, and ultraviolet scans. Those characteristics correspond with IDScan.net's advertised authentication technology.

33. Nexus claimed it had continuously exfiltrated newly scanned data for more than one year. Its driver's-license inventory reportedly increased by nearly 400,000 records within 24 hours, indicating that the unauthorized access remained active shortly before public disclosure.

34. Krebs identified his own license and those of other individuals in Nexus. Nine individuals confirmed that timestamps associated with their stolen scans corresponded with actual travel or car-rental activity.[8]

35. IDScan.net learned of the allegations on September 1, 2026, initiated breach-response procedures, notified its cyber insurer, engaged counsel and forensic assistance, and began coordinating with law enforcement. It has not yet publicly confirmed the nature or full scope of the Data Breach.

36. On September 2, 2026, the FBI publicly confirmed that it was investigating the reported exposure. Reuters reported that it could not independently establish IDScan.net as the source.[9]

37. The Nexus service disappeared shortly after the initial report, but the disappearance of the marketplace does not establish that the stolen images were destroyed or recovered.

---

[8] *Id.*

[9] Raphael Satter, *FBI Probes Report of Data Breach Exposing Millions of Drivers' Licenses in US, Canada*, REUTERS (Sept. 2, 2026), https://www.reuters.com/world/us/fbi-says-it-is-investigating-report-that-millions-us-drivers-licenses-exposed-2026-09-02/?utm_source=chatgpt.com.

38. IDScan.net has not provided Plaintiff with notice of the Data Breach as of the filing date.

**C. Plaintiff's Experience and Injuries**

39. Plaintiff Nicholas Layman is a natural person and citizen of Alabama, residing in Jefferson County.

40. In or around 2025, Plaintiff visited a Las Vegas, Nevada retail establishment that required scanning his government-issued identification in order to enter the premises.

41. Plaintiff presented his valid Alabama driver's license to the business's employee at the counter.

42. Plaintiff recalls that the employee placed or inserted his license into an electronic scanning device, which captured information from the license. Upon information and belief, IDScan.net's VeriScan system was utilized to confirm his identity.

43. The scanned license contained Plaintiff's name, photograph, residential address, date of birth, driver's-license number, signature, physical descriptors, issuance and expiration dates, and machine-readable barcode information.

44. Plaintiff provided his license solely to verify his identity and eligibility to enter the premises. He did not authorize the indefinite retention, commercial exploitation, or disclosure to criminals of his license or the information it contains.

45. Plaintiff did not knowingly interact or contract with Defendant, and he was not meaningfully informed that Defendant would receive, process, store, or retain a complete digital image of his license.

46. Defendant's published materials specifically identify the business as a customer of its identity-verification products.

47. Defendant's products can capture complete ID images, conduct front-and-back

comparisons, analyze ultraviolet and infrared security features, synchronize data across devices, and retain information in cloud-based systems.

48. Accordingly, Plaintiff alleges on information and belief that the scanner used Defendant's technology and transmitted or made his license information available to Defendant.

49. Plaintiff's scan occurred during the period in which the operators of Nexus reportedly claim they were continuously exfiltrating newly scanned identification documents.

50. Based upon the business's documented relationship with Defendant and the date and circumstances of Plaintiff's scan, Plaintiff alleges on information and belief that his license information was maintained in Defendant's potentially affected environment and was at substantial risk of exposure in the Reported Data Breach. Plaintiff acknowledges that IDScan has not yet provided him with an individual notice or lookup result confirming that his specific information was accessed or exfiltrated.

51. Defendant thereby obtained, processed, and maintained Plaintiff's PII.

52. Defendant used Plaintiff's PII to provide the identity-verification services it sells to its customers, and derived revenue from doing so.

53. Plaintiff reasonably expected that any entity that received, processed, or stored an image of his driver's license would use reasonable measures to protect it in accordance with its internal policies and state and federal law.

54. Upon information and belief, Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

55. On information and belief, based on the foregoing facts and reasonable inferences, Plaintiff's driver's-license information was at substantial risk of being accessed, exfiltrated, or

offered for sale through Nexus. Plaintiff does not allege as established fact that his particular license image appeared in Nexus, was offered for sale, is presently accessible to criminals, has already been misused, or will imminently be disseminated. Rather, the circumstances described above support a reasonable inference that his information was within the potentially affected environment.

56. If Plaintiff's license information was accessed in the Reported Data Breach, the compromised data would include at least Plaintiff's name, photograph, residential address, date of birth, driver's-license number, signature, physical descriptors, and the machine-readable data encoded on his license.

57. Plaintiff suffered actual injury from the exposure of his PII—which violates his right to privacy and his interest in controlling his own identity information.

58. Plaintiff suffered actual injury in the form of damage to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

59. As a result of the Reported Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate its potential impact, including researching the Reported Data Breach, reviewing his financial account statements, and changing security settings on his online accounts.

60. Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff is experiencing anxiety and concern caused by the potential exposure of his photograph, residential address, signature, and driver's-license number, and by the uncertainty over how a complete image of his government-issued identification may be used. Plaintiff is especially concerned that a high-resolution image of his license may be in the hands of criminals who specialize in identity fraud.

61. Plaintiff is now subject to a present and continuing substantial risk of fraud, identity theft, and misuse resulting from his PII potentially being placed in the hands of unauthorized third parties.

62. If an individual's PII is accessible on the dark web, cybercriminals can use the stolen and compromised information to gather and steal even more information.[10]

63. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

**D. Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft**

64. Plaintiff and members of the proposed Class have suffered injury from the compromise, exposure, and alleged dark-web listing of their PII, and the resulting risk of misuse, that can be directly traced to Defendant.

65. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

---

[10] Ryan Toohil, *What do Hackers do with Stolen Information*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Unauthorized use of stolen PII; and

g. The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

66. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

67. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

68. It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

69. One such example of criminals using PII for profit is the development of "Fullz" packages.

70. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of

accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

71. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. It is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's compromised PII is at material risk of being misused, and that such risk is fairly traceable to the Data Breach.

72. Defendant failed to prevent unauthorized access to and exfiltration of the PII of Plaintiff and members of the proposed Class, exposing that PII to persons who engage in disruptive and unlawful practices, and thereby creating a risk of online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized accounts (i.e., identity fraud) using the compromised PII.

73. To the extent Defendant failed to provide timely and adequate notice of the Data Breach, that failure exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and to mitigate the harm caused by the Data Breach.

**E. Consumers Prioritize Data Security**

74. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[11] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[12]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[13]

c. 89% of consumers stated that "I care about data privacy."[14]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[15]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[16]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[17]

---

[11] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).

[12] *Id*. at 3.

[13] *Id*.

[14] *Id*. at 9.

[15] *Id*.

[16] *Id*.

[17] *Id*. at 11.

75. Defendant knew or should have known that adequate implementation of cybersecurity and protection of PII was important to Plaintiff and Class members.

**F. Defendant Failed to Adhere to FTC Guidelines**

76. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

77. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal individual information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

78. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

79. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

80. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect individuals' data, treating the failure to employ reasonable and

appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

81. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to the PII it collects and stores constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**G. Defendant Failed to Follow Industry Standards**

82. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

83. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

84. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

85. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## V. CLASS ACTION ALLEGATIONS

86. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following **Nationwide Class**:

> All individuals residing in the United States whose PII was compromised in the Data Breach.

87. Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

88. Plaintiff reserves the right to amend the class definition and add state subclasses.

89. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Federal Rule of Civil Procedure 23.

90. **Numerosity**. Plaintiff is representative of the proposed Class, consisting of potentially millions of members, far too many to join in a single action.

91. **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control.

92. **Typicality**. Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same alleged failure to provide timely and adequate notice of the Data Breach.

93. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Plaintiff's interests do not conflict with Class members' interests, and he has retained

counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

94. **<u>Commonality</u>**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendant was negligent in maintaining, protecting, and securing PII;

iv. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

v. Whether the Data Breach caused Plaintiff and the Class injuries;

vi. What the proper damages measure is; and

vii. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

95. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

96. Plaintiff realleges all previous paragraphs as if fully set forth below.

97. Plaintiff and members of the Class entrusted their PII to Defendant. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

98. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by failing to prevent unauthorized access to and exfiltration of this information by third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

99. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

100. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff' and members of the Class's personal information and PII.

101. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

102. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class's and the importance of exercising reasonable care in handling it.

103. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff and members of the Class's injury. To the extent Defendant failed to provide reasonably timely and adequate notice of the Data Breach to Plaintiff and members of the Class, that failure exacerbated the harm from the Data Breach and Plaintiff and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

104. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the compromise and unauthorized access to and exfiltration of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Nationwide Class)**

105. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

106. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

107. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive PII.

108. Defendant breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

109. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and

amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

110. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

111. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

112. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

113. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

114. As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

115. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

116. This claim is pleaded in the alternative to any current or future contract claims, pursuant to Fed. R. Civ. P. 8(d).

117. Plaintiff and members of the Class indirectly conferred a benefit upon Defendant when Defendant collected, scanned, verified, and stored Plaintiff's and Class members' PII.

118. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class. Defendant also benefited from the receipt of Plaintiff's and Class members' PII, as this was used to facilitate Defendant's business of ID verification.

119. Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the proposed Class's PII because Defendant failed to adequately protect that PII. Plaintiff and the proposed Class would not have allowed their PII to be provided to Defendant had they known Defendant would not adequately protect it.

120. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

**PRAYER FOR RELIEF**

Plaintiff and Class members demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and Class members;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and Class members;

D. Requiring Defendant to adopt and maintain reasonable data-security measures to protect the identity-document data retained in its possession;

E. Awarding Plaintiff and Class members damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and Class members in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and Class members leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 3, 2026

/s/ Scott J. Falgoust
Scott J. Falgoust (LA S.B. # 33545)
**BRYSON HARRIS SUCIU DEMAY, PLLC**
5301 Canal Boulevard
New Orleans, Louisiana 70124
Telephone: (919) 585-4634
sfalgoust@brysonpllc.com

Jonathan S. Mann (Alabama SB-1083-A36M)*
**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
Email: jonm@pittmandutton.com

*Counsel for Plaintiff and the Putative Class*

**Pro hac vice forthcoming*